## SPRINGFIELD NAT. BANK et al. v. AMERICAN SURETY CO. OF NEW YORK.

(Circuit Court of Appeals, Sixth Circuit. July 3, 1925.)

No. 4285.

1. Banks and banking ⬦⟶77(4)—Surety for cashier held not entitled to set off claim against bank acquired after its insolvency.

The surety on a bond given to a bank by its cashier for the faithful performance of his duties cannot set off against its liability thereon the amount it paid to the state as surety on a bond previously given by the bank to secure state deposits, after failure of the bank through defalcations of its cashier.

2. Principal and surety ⬦⟶174—Agreement of principal to indemnify surety implied.

There is always an implied obligation, in the absence of an agreement to the contrary, that the principal will indemnify his surety against loss resulting from the suretyship, and an express agreement therefor adds nothing to the surety's rights.

Appeal from the District Court of the United States for the Eastern Division of the Southern District of Ohio; John E. Sater, Judge.

Suit in equity by the Springfield National Bank and John A. Best, its receiver, against the American Surety Company of New York. Decree for defendant, and complainants appeal. Reversed.

J. E. Bowman, of Springfield, Ohio (Frank W. Geiger, of Springfield, Ohio, on the brief), for appellants.

James I. Boulger and W. R. Pomerene, both of Columbus, Ohio, for appellee.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. On April 8, 1922, the American Surety Company executed a bond to the state of Ohio, as surety for the Springfield National Bank, to secure a deposit of the state of $50,000 in the bank. On May 20, 1922, it became surety on a bond of $50,000 executed by A. H. Penfield for the faithful performance of his duties as cashier of the bank. Through the frauds of Penfield the bank became insolvent and was closed by the comptroller April 5, 1923. Shortly after the appointment of the receiver the state filed proof of its claim against the bank, which was allowed, and a certificate of allowance issued to the state and assigned by it to the surety company upon the payment by that company of its full liability on the deposit bond. Subsequently the receiver for the bank paid to the surety company about $21,000 on the claim of the state. The

difference between the amount so received by the surety and what it paid to the state it claims is a debt due it from the bank which may be set off against its liability to the bank under the bond of Penfield. The lower court sustained the claim.

[1] The recent case of United States Fidelity & Guaranty Co. v. Wooldridge, Receiver, etc., 45 S. Ct. 489, 69 L. Ed. ——, decided May 11, 1925, clearly disposes of the contention that the surety company had the right of set-off as assignee or subrogee of the state. It is contended, however, for the company that a provision in the application of the bank for the bond, by which it agreed to "indemnify and keep indemnified" the surety against any loss sustained on account of the suretyship, brings into existence independent and different rights from those arising under the assignment which may be enforced against its liability on the cashier's bond.

[2] This provision did not give to the surety company any right that it otherwise did not have upon the execution of the bond, for there is always an implied obligation, in the absence of an agreement to the contrary, that the principal will indemnify the surety against loss resulting from the suretyship. This applied to the case just referred to, and hence the surety company has no rights that were not available to the guaranty company in that case. The company did not elect to stand alone on the express or implied obligation of the bank to indemnify it against loss on the deposit bond, but took an assignment of the state's claim and accepted its distributable share of the estate. But apart from that consideration, its potential liability on the deposit bond was converted into a claim against the bank when and not until the bank became insolvent and unable to repay the state. The liability on the Penfield bond became fixed upon his defalcation, whether the bank was or was not thereby rendered insolvent. The two bonds were separate transactions, totally lacking in contact. When other equities are involved the right of set-off ordinarily depends on mutual credits which have been defined as "an existing debt due to one party, and a credit by the other party, founded on, and trusting to such debt, as a means of discharging it." Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059. Courts of equity have held that the requisite mutuality exists where the transactions are such as to raise a presumption of reciprocal credits or an agreement for a set-off. Carr v. Hamilton, 129 U. S. 252, 9 S. Ct. 295, 32 L. Ed. 669.

But the presumption cannot be indulged here. Each bond was independent of the other and executed for the usual consideration for a single bond of that kind. The only color of connection between the two demands arises from the fortuitous circumstance that the dishonesty of the cashier caused the bank's insolvency. It could not be supposed that when the bank agreed to indemnify the surety on the deposit bond it relied on the latter's liability on the cashier's bond (not then in existence) in the event of his defalcation, or that the surety company, in accepting the bank's obligation, trusted as a means of discharging it to a liability that it thereafter assumed for a wholly separate consideration. Nor is it to be presumed that in executing the bond of the cashier for the usual consideration the surety company relied on the obligation of the bank to indemnify it against loss on the deposit bond. The bank was legally bound to repay on demand the deposit made by the state. The surety obligated itself to pay if the bank should default. To permit the performance of that obligation to defeat a separate surety obligation would eventuate in an unfair distribution of the bank's assets among its creditors. A majority of the court think the case is within the principle announced in the Wooldridge Case.

The judgment is reversed.