AETNA INSURANCE COMPANY *v.* MARYLAND CAST STONE CO., INC.

[No. 293, September Term, 1968.]

*Decided June 4, 1969.*

110

*Motion for rehearing filed June 12, 1969; denied June 23, 1969 and opinion modified.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*Douglas G. Worrall,* with whom were *Smith, Somerville & Case* on the brief, for appellant.

*Harrison M. Robertson, Jr.,* with whom were *Brune, Robertson & Iglehart* and *R. Edwin Brown* for appellee.

SINGLEY, J., delivered the opinion of the Court.

This case comes to us on an agreed statement of facts as permitted by Maryland Rule 828 g:

> "Park Heights Joint Venture ('Park Heights') as owner contracted with Gilbert Corporation ('Gilbert') as general contractor for the construction of an apartment building at 6000 Park Heights Avenue, Baltimore, Maryland. Mary-

land National Bank ('Bank') agreed to lend monies to finance the construction contract, but never advanced any funds to Gilbert or to Park Heights.

"On July 29, 1965, Gilbert as principal and Aetna Insurance Company ('Aetna') executed a 'Dual Obligation Payment Bond' unto Park Heights and the Bank as obligees for the construction of the apartment building, which bond recites 'for the use and benefit of claimants,' in the amount of $400,000.00. * * *

"On August 3, 1965, Maryland Cast Stone Co., Inc., ('Maryland Cast Stone'), submitted a proposal to Gilbert, for Maryland Cast Stone to furnish and deliver for the apartment building, certain precast concrete balconies, sills and copings and Miami Brick Stone for an aggregate price of $25,539 plus tax. The proposal was accepted by Gilbert on August 10, 1965. * * * Maryland Cast Stone timely manufactured the ordered materials and requested delivery instructions from Gilbert. These were never received and the materials were never delivered.

"Maryland Cast Stone made demand for payment of the contract price upon Gilbert and Aetna, but no such payment was ever made and Aetna denied any liability to claimants under the bond, including Maryland Cast Stone.

"On November 3, 1966, Maryland Cast Stone filed suit against Gilbert and Aetna in the Superior Court of Baltimore City for the contract price of $25,539, interest and costs.

"Aetna appeared December 1, 1966, by its counsel and filed general issue pleas. Judgment by default for want of plea was entered against Gilbert in favor of Maryland Cast Stone by order of court May 5, 1967.

"After notice to Aetna, the matter was heard on June 1, 1967, by the Court (Carter, J.) and

inquisition entered for $23,786 after allowance of $1,045 for sills and coping and of $708 for Miami Stone which Maryland Cast Stone had been able to sell in mitigation of damages. The same date, judgment was made absolute in favor of Maryland Cast Stone against Gilbert for $23,786, interest and costs of suit. No appeal has ever been filed from this judgment.

"On June 7, 1967, Aetna filed its motion for consolidation of Maryland Cast Stone's suit against it and Gilbert with three other actions against the same defendants. * * * An order for consolidation was entered the same date.

"Maryland Cast Stone filed a stipulation of fact and motion for summary judgment on September 13, 1967. * * *

"On September 25, 1967, the consolidated cases were heard on motion for summary judgment. The Court (Sklar, J.) concluded as of November 27, 1967, to grant the motions in favor of the plaintiffs, including Maryland Cast Stone. * * *

"A further hearing was held on April 26, 1968, as to the amount of the judgment in favor of Maryland Cast Stone against Aetna, where their respective counsel had been unable to agree on the amount. The memorandum opinion of the Court (Sklar, J.) and order thereon were entered September 25, 1968 [granting Maryland Cast Stone's motion for summary judgment for $23,786 with interest from date suit was filed and costs], from which the instant appeal is taken."

Aetna raises two questions in this appeal. First, it contends that Maryland Cast Stone can make no claim against Aetna's bond without showing that payments had been made to Gilbert by Park Heights or the Bank under the construction contract. Secondly, it contends that

Maryland Cast Stone can make no claim against Aetna's bond without proof of delivery of the materials to Gilbert.

We do not agree with Aetna's first contention. Gilbert and Aetna entered into a "dual obligee payment bond," the significant provisions of which were as follows:

"KNOW ALL MEN BY THESE PRESENT, THAT we, GILBERT CORPORATION, Suite 903 World Building, 8121 Georgia Avenue, Silver Spring, Maryland (hereinafter called the Principal) and AETNA INSURANCE COMPANY, a Connecticut corporation licensed to do business in the State of Maryland (hereinafter called the Surety) are held and firmly bound unto PARK HEIGHTS JOINT VENTURE (hereinafter called the Owner-Obligee) and MARYLAND NATIONAL BANK, Baltimore, Maryland 21203 (hereinafter called the Lender-Obligee), their successors and assigns as their respective interests may appear, as Obligees (hereinafter collectively referred to as Obligees), for the use and benefit of claimants as hereinbelow defined, in the sum of FOUR HUNDRED THOUSAND and no/100 DOLLARS ($400,-000.00), lawful money of the United States of America, for the payment of which Principal and Surety bind themselves, their estate representatives, successors and assigns, jointly and severally, firmly by these presents.

"WHEREAS, Principal has entered into a construction contract with Owner-Obligee dated the       day of       1965, for the construction of EIGHT STORY APARTMENT BUILDING TO CONTAIN (28) TWENTY EIGHT UNITS, TO BE LOCATED AT 6000 PARK HEIGHTS AVENUE, BALTIMORE, MARYLAND, on Owner Obligee's premises at 6000 Park Heights Avenue, Baltimore, Maryland, in accordance with plans and specifications prepared by

which contract, plans and specifications are by reference made a part hereof, as fully as if recited at length herein.

"WHEREAS, Lender-Obligee has agreed to lend to Owner-Obligee monies to be secured by a mortgage on the above mentioned premises of Owner-Obligee and to be used in making payments under said construction contract, and Lender-Obligee desires protection as its interest may appear in the event of default by the Principal under said construction contract with Owner-Obligee, said protection to be subject to the performance by the Obligees, or either of them, of the obligations to the Principal as set forth in said construction contract.

"NOW, THEREFORE, the condition of this obligation is such that, if Principal shall pay all persons who have contracts directly with the Principal for labor and materials furnished pursuant to the provisions of said construction contract, failing which such persons shall have a direct right of action against Principal and Surety under this obligation, and further that, if Principal shall cause all mechanics' liens filed by reason of non-payment for labor and material furnished in the prosecution of said construction to be discharged of record, then this obligation shall be null and void; otherwise, to be and remain in full force and effect, subject, however, to the following express conditions:

"1. The Principal and Surety shall not be liable to the Obligees, or either of them, unless the said Obligees, or either of them, make payment to the Principal or, in the event of Principal's abandonment of project or default, to the Surety, strictly in accordance with the terms of said construction contract as to payments, and perform all the other obligations to be performed under said con-

struction contract at the time and in the manner therein set forth.

"2. A claimant is defined as one having a direct contract with the Principal or with a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.

"3. The above named Principal and Surety hereby jointly and severally agree with the Obligees that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Owner shall not be liable for the payment of any costs or expenses of any such suit."

Aetna would have us hold that for it to be answerable to Maryland Cast Stone, there must first be proof that Park Heights or the Bank made payments to Gilbert. The simple answer to this contention is that such a payment may be a condition precedent to the assertion of a claim against Aetna by Park Heights or the Bank, the obligees of the bond, but it has nothing whatever to do with Maryland Cast Stone.

Maryland Cast Stone is a creditor beneficiary of the contract between Gilbert and Aetna, and by the very terms of the bond, it is a member of the class of persons

to be protected: "* * * for the use and benefit of claimants as herein below defined, * * *." Gilbert of course benefited from the bond, for without it, Maryland Cast Stone may have been reluctant to supply the materials, or may have insisted on some other form of protection. Under these circumstances, we cannot say that Maryland Cast Stone's rights were derivative, dependent on those of Park Heights or the Bank. *Certified Industries Inc. v. Royal Indemnity Co.*, 252 N. Y. S. 2d 345, 43 Misc. 2d 761 (1964). In effect, this bond is both a performance and a payment bond: It protects Park Heights and the Bank against non—performance by Gilbert, and protects subcontractors and materialmen against non-payment by Gilbert. While it was possible for Park Heights and the Bank to abrogate Gilbert's and Aetna's obligation to them by failing to pay Gilbert, such a course of action had no effect on the subcontractors or materialmen. Having supplied goods in good faith, Maryland Cast Stone cannot be denied its rights absent some act or omission of its own. *Equitable Surety Co. v. U. S.*, 234 U. S. 448, 34 S. Ct. 803, 58 L.Ed. 1394 (1914); *Glades County, Fla. v. Detroit Fidelity & Surety Co.*, 57 F. 2d 449 (5th Cir. 1932).

> "* * * [S]ince the rights of laborers and materialmen are independent of the rights of the obligee in the bond, it is generally held that their right to recover against a surety on such a bond cannot be defeated by any act or omission of the obligee named in the bond, not authorized or participated in by the laborers or materialmen, even though the conduct or default is such as would release the surety from liability to the obligee." 17 Am. Jur. 2d *Contractors' Bonds* § 16 (1964) at 203.

Maryland Cast Stone is not an obligee, but a claimant as defined in paragraph 2 of the bond. Assuming that it supplied material "used or reasonably required for use in the performance of the contract," its rights are defined in paragraph 3 of the bond which provides:

"*  *  * that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, *  *  *."

There seems to be no question but that Maryland Cast Stone gave the notice required by the bond.

There remains the second and somewhat more troublesome question raised by Aetna: Must Maryland Cast Stone prove delivery to Gilbert in order to recover on the bond? It must be remembered that Maryland Cast Stone is claiming under a contract which protected suppliers of material "used or reasonably required for use" and not under our mechanics' lien statute, Maryland Code (1957, 1968 Repl. Vol.) Art. 63 § 1, which allows a lien "for materials furnished for or about the [building]."

Aetna would have us analogize the situation to the mechanics' lien cases, which hold that, for materials to be "furnished," they must have been delivered, and refers us to 10 Appleman, *Insurance* § 5941 (1943); 13 Couch, *Insurance* § 47.281 (2d Ed. 1965); Annot., 39 A.L.R.2d 394 (1955); *Maryland Cas. Co. v. Bd. of Water Comm'rs*, 66 F. 2d 730 (2d Cir. 1933); and *United States v. Murdock*, 99 Me. 258, 59 A. 60 (1904), which we do not find persuasive.

We think that the resolution of the question is found in the Uniform Commercial Code. Code (1957, 1964 Repl. Vol.), Art. 95B §§ 2-503 and 2-507 provide:

"§ 2-503 Manner of seller's tender of delivery.
(1) Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery. The manner, time and place for tender are determined by the agreement and this subtitle, and in particular

(a) Tender must be at a reasonable hour, and if it is of goods they must be kept available for the period reasonably necessary to enable the buyer to take possession; but

(b) Unless otherwise agreed the buyer must furnish facilities reasonably suited to the receipt of the goods. .

\* \* \*

(3) Where the seller is required to deliver at a particular destination tender requires that he comply with subsection (1) \* \* \*."

"§ 2-507 Effect of seller's tender; delivery on condition.

(1) Tender of delivery is a condition to the buyer's duty to accept the goods and, unless otherwise agreed, to his duty to pay for them. Tender entitles the seller to acceptance of the goods and to payment according to the contract."

Maryland Cast Stone was in Rockville; the Park Heights project, in Baltimore. The contract for precast concrete balconies, sills, copings and Miami Brick Stone at an aggregate cost of $25,539 provided: "Prices are furnished and delivered only," "\* \* \* Prices are F.O.B. trucks, job site," *"Terms:*—Net 10th Prox." It will be recalled that "Maryland Cast Stone timely manufactured the ordered materials and requested delivery instructions from Gilbert. These were never received and the materials were never delivered" nor, under the facts before us, did they have to be delivered. The materials, which were specially fabricated, were, under the language of the bond, "reasonably required for use in the performance of the contract." Under the circumstances of the case, Maryland Cast Stone's tender of goods which conformed to the contract was the equivalent of delivery and fixed Gilbert's duty to pay for them. 1 Hawkland, *A Transactional Guide to the Uniform Commercial Code* (1964) § 1.3201 at 182-83, § 1.33 at 185; *compare Wilke, Inc. v. Cummins*

*Diesel Engines, Inc.,* 252 Md. 611, 250 A. 2d 886 (1969), where there was a delivery of nonconforming goods.

We need not reach the question whether material especially fabricated for a building, but never delivered to the site, is "furnished" within the meaning of a mechanics' lien statute. *See* Annot., 33 A.L.R. 320 (1924) and *compare Grainger & Co. v. Johnson,* 286 F. 833 (6th Cir. 1923), 33 A.L.R. 315, *cert. den.* 262 U. S. 749, 67 L. Ed. 1213, 43 S. Ct. 524 (1923) ; *Haskell v. McClintic-Marshall Co.,* 289 F. 405 (9th Cir. 1923) *modifying* 281 F. 166 (W.D. Wash. 1922) ; *Berger v. Turnblad,* 98 Minn. 163, 107 N. W. 543, 116 Am. St. Rep. 353 (1906) *with Warming v. Hargis,* 159 Wash. 501, 294 P. 248 (1930).

*Order affirmed; costs to be paid by appellant.*