In re BAY STATE YORK COMPANY, INC., Debtor.

Jeffrey A. KITAEFF, Chapter 7 Trustee of Bay State York Company, Inc., and Jager, Smith, Stetler & Arata, P.C., Plaintiffs,

v.

VAPPI & COMPANY, INC., Ronald F. Cahaly, as Trustee of the Union Square Development Trust, and Hartford Casualty Insurance Company, Defendants.

Bankruptcy No. 91–10187–JNG.
Adv. No. 91–1425–JNG.

United States Bankruptcy Court,
D. Massachusetts.

May 29, 1992.

Bruce F. Smith, Jager, Smith, Stetler & Arata, P.C., Boston, Mass., for plaintiffs.

Peter G. Hermes, Peabody & Arnold, Boston, Mass., for defendants.

## MEMORANDUM

JAMES A. GOODMAN, Chief Judge.

## I. INTRODUCTION

This case is presently before the Court on cross-motions for summary judgment. The issue is whether Hartford Casualty Insurance Company ("Hartford") can set off an obligation it owes Bay State York Company, Inc. ("BSY"), a subcontractor protected by a payment bond executed between Hartford as surety and Vappi & Co., Inc. ("Vappi") as principal, against a debt that BSY owes Hartford from other, unrelated payment and performance bonds executed between BSY as principal and Hartford as surety. For the reasons set forth below, this Court will allow Hartford to utilize the setoff provisions of the Bankruptcy Code.

1. The parties agree that November 13, 1990 is the date that BSY acknowledged to Hartford that it had defaulted on bonded projects. Neither party has alleged nor argued that this date has any particular significance.

## II. FACTS

The parties have submitted a Statement of Agreed Facts for purposes of their cross-motions for summary judgment. Since there are no material facts in dispute, the matter is ripe for summary judgment. *See* Federal Rule of Bankruptcy Procedure 7056.

Hartford is an insurance and surety company organized under the laws of New Jersey. Hartford is in the business of issuing performance bonds and payment bonds to various contractors and subcontractors. BSY is a Massachusetts business corporation formerly in the heating, ventilating and air-conditioning ("HVAC") business.

On January 8, 1991, an involuntary bankruptcy petition was filed against BSY. Jeffrey A. Kitaeff is the duly appointed and qualified Chapter 7 Trustee.

Prior to November 13, 1990, Hartford as surety and BSY as principal executed various labor and material payment bonds and performance bonds in favor of various obligees in connection with HVAC contracts and subcontracts between BSY and various entities (the "BSY Bonds"). On or about May 15, 1987, and July 19, 1988, in connection with the BSY Bonds, BSY executed General Indemnity Agreements through which it agreed, *inter alia*, to indemnify Hartford against any loss resulting from the BSY Bonds.

Hartford incurred losses on the BSY Bonds as a result of having made payments and incurred other expenses in excess of two million dollars. Of this amount, Hartford paid in excess of $500,000 after November 13, 1990 [1] but prior to January 8, 1991, the date the involuntary bankruptcy petition was filed against BSY.

On or about August 12, 1987, Hartford issued to Vappi a labor and material payment bond ("Vappi Bond") in connection with Vappi's obligations as general contractor on a project in Allston, Massachusetts, known as the Union Square Project.[2] BSY

2. Pursuant to the terms of the Bond, Hartford and Vappi jointly and severally agreed that every claimant having a direct contract with Vappi could sue on the bond and prosecute the suit

was a subcontractor to Vappi on the Union Square Project.

Vappi failed to pay BSY for labor, services and materials rendered to and on behalf of Vappi on the Union Square Project. On October 27, 1989, BSY commenced an action against Vappi in the Massachusetts Superior Court of Suffolk County to recover $425,790.93 for labor, services and materials expended on the Union Square Project.

On June 8, 1990, BSY filed a motion in state court to amend its complaint to add Hartford as a defendant. BSY alleged that Hartford, as surety, was liable to BSY pursuant to the Vappi Bond for the amount that Vappi owed BSY. The Superior Court allowed BSY's Motion to Amend Complaint on July 11, 1991. Shortly thereafter, BSY served the Amended Complaint upon Hartford. On July 29, 1991, Hartford removed the Superior Court action to this Court, where it is now pending.

In Hartford's Answer to the Amended Complaint, Hartford asserted an affirmative defense of setoff to BSY's claim. Nevertheless, Hartford admitted that, subject to its defense of setoff and an additional contractual defense regarding a condition precedent for payment, BSY was owed not less than $320,000 for the Union Square project.

The parties agree that the asserted obligations of BSY to Hartford arose prior to the filing of the involuntary bankruptcy petition against BSY on January 8, 1991, and that the obligation of Hartford to BSY arose more than ninety days prior to the filing of the petition.

## III. DISCUSSION

### A. *The Legal Positions of the Parties*

The Chapter 7 Trustee of Bay State York maintains that he is entitled to summary judgment on several grounds: 1) Hartford has no right of setoff arising from the doctrine of equitable subrogation; 2) Hartford cannot achieve a setoff under the doctrine of indemnification because there is a lack of mutual debt; and 3) it would be inequitable to allow a setoff under the circumstances of this case.

With respect to the first of his arguments, the Trustee principally relies on the case of *Western Casualty and Surety Co. v. Brooks*, 362 F.2d 486 (4th Cir.1966). In that case, the court articulated the issue before it as follows: "[T]he question presented on this appeal is the right of a surety on two public construction contracts, both performed by the same contractor, to setoff losses incurred on one bond with the excess realized on the other." 362 F.2d at 487.

The facts in *Western Casualty* are straightforward. Western Casualty was surety on two bonds executed by a bankrupt company, Bruns Coal Company, Inc. ("Bruns"), with respect to two separate road construction projects undertaken for the State of Ohio.

In the application for the bonds, Bruns assigned to Western Casualty as collateral security all sums held by the state for Bruns at the time of any breach. These sums were to be available for Western Casualty to offset losses incurred on any other bonds between the two parties.

Bruns completed construction work on the two projects but failed to pay certain subcontractors, laborers and materialmen who then filed mechanic's liens with the state. The state withheld all sums due Bruns, and Western Casualty satisfied the various claims. Bruns notified the state to send all future payments to Western Casualty. On one project the payments by the state exceeded the payments made by Western Casualty to the subcontractors, while on the other project the surety suffered a significant loss.

When Bruns was adjudged a bankrupt, the trustee sought turnover of the sums paid to the surety, claiming the payments to Western Casualty were voidable preferences. The Referee agreed, finding that the equitable doctrine of subrogation was inapplicable. The Referee and the District Court determined that the excess payments realized on one project could not be applied

to final judgment for sums due the claimant for unpaid labor or materials.

to offset the losses incurred by Western Casualty on the other project.

The Court of Appeals, in affirming the lower court, began its discussion by noting that the surety acquired an equitable interest on the funds retained by the state. The court described this interest as a property interest that related back to the date of the surety bond and never became a part of the bankruptcy estate. *See Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). However, the court went on to state that the surety could not by way of subrogation assert any greater rights than the creditor in whose shoes it was substituted. Accordingly, the court determined that the surety could not retain any of the funds on either project in excess of the claims of laborers and materialmen it paid on each individual project because to do so "would be contrary to the equal equities which other general creditors have in the property of the bankrupt." 362 F.2d at 491.

Although the Trustee correctly notes that the present case does not involve contract balances, he argues that the legal principles set forth in Western Casualty should be applied to the instant case. In his words, "[t]he laborers and materialmen who performed work on contracts entered by BSY, and who were paid by Hartford under the BSY Bonds, would not have equitable rights, to which Hartford would succeed, to recover monies due BSY under the Vappi Bond—other than those of a general unsecured creditor."

Hartford rejects the Trustee's subrogation argument in its entirety. It maintains that it has a right of indemnification against BSY arising from written contracts, not by way of subrogation, and that the proof of claim it filed so indicates. Indeed, it states that "[s]ubrogation has nothing to do with this adversary proceeding."

With respect to his indemnification argument, the Trustee asserts that Hartford cannot achieve a setoff by establishing BSY's liability under a theory of indemnification where it cannot achieve a setoff under a subrogation theory. With respect

to this argument, the Trustee principally relies on *Springfield Nat'l Bank v. American Surety Co. of N.Y.*, 7 F.2d 44 (6th Cir.1925). In that case, the American Surety Company executed two bonds, one as surety for the Springfield National Bank to secure a $50,000 deposit made by the State of Ohio in the Springfield National Bank and the other as surety on a bond executed by an individual named Penfield for the faithful performance of his duties as a bank cashier. Penfield defrauded the bank, resulting in its insolvency and the appointment of a Receiver. The State of Ohio filed a proof of claim against the bank which was allowed. The certificate of allowance issued to the state was assigned by the state to American Surety upon the payment by the surety of its full liability to the state on the deposit bond. Subsequently, the Receiver paid the surety company on the proof of claim filed by the state. The surety then sought to set off the difference between the amount it received on the assigned proof of claim and what it paid to the state, claiming this as a debt due it from the bank, against its liability to the bank under the Penfield bond.

Relying upon *United States Fidelity and Guar. Co. v. Wooldridge*, 268 U.S. 234, 45 S.Ct. 489, 69 L.Ed. 932 (1925), the Court of Appeals for the Sixth Circuit concluded that the surety's claim of setoff as assignee or subrogee of the state was meritless. However, the surety also argued that the setoff was permitted because of a provision in the bond application in which the bank agreed to "indemnify and keep indemnified" the surety against any loss sustained on account of the suretyship. The court stated:

> This provision did not give to the surety company any right that it otherwise did not have upon the execution of the bond, for there is always an implied obligation, in the absence of an agreement to the contrary, that the principal will indemnify the surety against loss resulting from the suretyship.... The company did not elect to stand alone on the express or implied obligation of the bank to indemnify it against loss on the deposit bond, but

took an assignment of the state's claim and accepted its distributable share of the estate.

7 F.2d at 45. The court went on to note that the surety's liability on the bond only became a claim against the bank when the bank became insolvent and unable to repay the state; and that the surety's liability on the Penfield bond became fixed on Penfield's defalcation. According to the court, the two bonds were separate transactions and the presumption of mutuality, reciprocal credits or an agreement for setoff could not be indulged because "[t]o permit the performance of that obligation [to pay the state if the bank should default] to defeat a separate surety obligation [under the Penfield bond] would eventuate an unfair distribution of the bank's assets among its creditors." *Id.*

The Trustee argues that the Vappi and BSY Bonds were completely independent of one another and that the only "connection" between the two is the fact that Hartford was the bonding company. In short, the Trustee says that Hartford's debt to BSY on account of the Vappi Bond and BSY's debt to Hartford under the BSY Bonds are no more mutual in nature than the debts between the surety and the bank in *Springfield Nat'l Bank.*

Hartford rejects the mutuality of transactions requirement, relying upon *In re Sherman Plastering Corp.*, 346 F.2d 492 (2d Cir.1965) and *Hayden v. Standard Accident Ins. Co.*, 316 F.2d 598 (9th Cir.1963). Moreover, it states that *Springfield Nat'l Bank v. American Surety Co. of N.Y.*, 7 F.2d 44 (6th Cir.1925), is inapplicable for two reasons: 1) it interprets federal common law with respect to insolvencies of national banks, not bankruptcy law; and 2) the facts of the case vitiate against its extension to the instant case. Hartford notes that in contrast to the facts in

*Springfield Nat'l Bank, supra,* and *Wooldridge, supra,* where the sureties were assignees who had received payment on their assigned claims, it filed a proof of claim in the BSY case solely in its own name and on its contractual right to be indemnified. Moreover, Hartford highlights the definition of mutuality used by the Sixth Circuit, namely " 'an existing debt due to one party, and a credit by the other party, founded on, and trusting to such debt, as a means of discharging it,' " 7 F.2d at 45 (citations omitted), and contrasts that definition with the requirements of section 553 of the Bankruptcy Code.

Hartford's position is simple. It asserts that "the debt and claim need not arise from the same transaction, nor must they be of the same character," *In re Denby Stores, Inc.*, 86 B.R. 768, 777 (Bankr. S.D.N.Y.1988). *See also In re Braniff Airways, Inc. v. Exxon Co, U.S.A.*, 814 F.2d 1030, 1035 (5th Cir.1987); *In re Elsinore Shore Assocs.*, 67 B.R. 926, 936 (Bankr.D.N.J.1986). Moreover, it claims that a setoff was allowed under nearly identical facts in *In re Sherman Plastering Corp.*, 346 F.2d 492 (2nd Cir.1965).

The *Sherman Plastering* case was decided under section 68 of the Bankruptcy Act, the predecessor of section 553 of the Bankruptcy Code.[3] In that case the debtor, Sherman Plastering Corp., was engaged by a prime contractor, Joseph Rugo, as a subcontractor in the construction of an office building. When Rugo defaulted in payment, Sherman turned to a bond executed by three corporate sureties. The bond bound the sureties jointly and severally. Sherman commenced an action on the bond and recovered a judgment against the sureties. Two of the sureties (United States Fidelity & Warranty Co. and American Automobile Insurance Co.) tendered their pro rata shares of the judgment post-filing.

---

**3.** Section 68 provided in relevant part:

    a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

    b. A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt-

cy which (1) is not provable against the estate and allowable under subdivision g of section 93 of this title; or (2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy.

Hanover Insurance Co., however, when it filed its proof of claim sought to discharge its pro rata share by setting off an unrelated indemnification claim. As the court found, this claim arose from Sherman's contractual duty to reimburse Hanover for payments made under another performance bond pursuant to which Hanover acted as surety for Sherman on another construction project. Sherman resisted the tenders made by the sureties for what the court called "obvious reasons." 346 F.2d at 493. The court described Sherman's strategy as follows:

> [T]o collect the full amount of the Maine judgment from American and Fidelity, with the hope of destroying Hanover's set-off, thereby enabling it to pay off Hanover's claim at the scaled down rate fixed in the Chapter XI arrangement and yet to satisfy its claim under the Maine judgment in full. It sought to justify this position by invoking the maxim that a joint debt (the debt owed by Hanover) cannot be set off by a single debt (the debt owned by Hanover), and by insisting that this maxim was embodied in the mutuality-of-debts requirement of section 68 of Bankruptcy Act.

*Id.* In affirming the allowance of the set-off, the court held that

> No legitimate interest would be served by disallowing this set-off, and in fact disallowing the set-off would frustrate the manifest equitable purposes of section 68. It would put Hanover in the inequitable position of having to pay its debt to Sherman in full while receiving only partial satisfaction of its clam against Sherman. Neither the rehabilitative purposes of a Chapter XI arrangement nor section 68's requirement that the debts be mutual dictates such a result. The debts are owed and owned by the same party, acting in the same capacity. The jointness of the debt owed by Hanover affords Sherman the alternative of collecting the whole amount from the other joint obligors. However, the availability of this alternative, conceived of as a means of protecting the obligee from certain contingencies, none of which materialized in this case, such as the insol-

vency or lack of amenability to suit of the other joint obligors, does not mean that Hanover does not owe its agreed upon share of the joint debt, or that it owes it in a different capacity than it owns its debt against Sherman.

*Id.* at 493–94.

Although the Trustee recognizes the similarity of the fact patterns in *Sherman Plastering* and the instant case, he maintains that the issue decided by the Second Circuit case was not whether there was mutuality per se. Rather, the Trustee says the court only addressed the issue of whether mutuality could exist where a debt was owed jointly and severally by three co-sureties and the claim to be setoff was held by only one of the co-sureties. The Trustee also notes that the case "stands alone" in its conflict with the Sixth Circuit opinion in *Springfield Nat'l Bank.*

**B.** *Mutuality of Debts*

Section 553 of the Bankruptcy Code provides in relevant part:

> (a) Except as otherwise provided in this section ..., this title does not affect any right of a creditor to offset a mutual debt owing by such a creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C. § 553. Section 553 does not create any new right of setoff. Rather, it recognizes the existence of the doctrine under nonbankruptcy law and adds some additional requirements. *See In re Bacigalupi, Inc.,* 60 B.R. 442 (9th Cir. BAP 1986); *In re Marta Group, Inc.,* 47 B.R. 220 (Bankr.E.D.Pa.1985).

The First Circuit, though not ruling directly on the present question, has set down the standard for determining mutuality of debts for the purposes of setoff pursuant to 11 U.S.C. § 553: "It is hornbook law that to be considered mutual, 'debts must be in the same right and between the same parties, standing in the same capacity.'" *WJM, Inc. v. Massachu-*

*setts Dept. of Pub. Welfare*, 840 F.2d 996, 1011–12 (1st Cir.1988), *quoting* 4 L. King *Collier on Bankruptcy* ¶ 553.04 (15th ed. 1987). *Accord, In re Johnson*, 136 B.R. 306 (Bankr.M.D.Ga.1991); *In re Evatt*, 112 B.R. 405 (Bankr.W.D.Okla.1989), *aff'd*, 112 B.R. 417 (W.D.Okla.1990); *In re Winnett*, 97 B.R. 7 (Bankr.E.D.Cal.1989). The Court of Appeals for the First Circuit has also ruled that a creditor's "setoff rights are governed by Massachusetts' basic common-law setoff doctrines." *In re Saugus General Hospital, Inc.*, 698 F.2d 42, 44 (1st Cir.1983).

██ This court, then, in deciding the present question, must determine whether (1) the debts are in the same right, (2) the debts are between the same parties, and (3) the parties are standing in the same capacity. Because the mutuality requirement is strictly construed against the claimant, *see In re Communicall Central, Inc.*, 106 B.R. 540, 545 (Bankr.N.D.Ill.1989); *In re NTG Industries, Inc.*, 103 B.R. 195, 196 (Bankr.N.D.Ill.1989); *In re Evatt, supra*, Hartford must establish all three of these elements to succeed. However, the allowance or disallowance of a setoff is a decision that rests in the sound discretion of the bankruptcy court, *Cumberland Glass Mfg. Co. v. DeWitt & Co.*, 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042 (1915); *Melamed v. Lake Co. Nat'l Bank*, 727 F.2d 1399 (6th Cir.1984); *In re Blanton*, 105 B.R. 321 (Bankr E.D.Va.1989), and despite its discretionary nature, courts have stated that "setoff is a favored remedy, based upon notions of fairness, and it is not to be denied merely because it would provide an unjust result," *In re Blanton, supra* at 337; *In re Applied Logic Corp.*, 576 F.2d 952 (2d Cir.1978). Indeed, one court has determined that courts have exercised discretion to deny setoffs only in instances involving creditors engaged in illegal or fraudulent conduct. *In re Blanton*, 105 B.R. at 337.

**(1) The Debts Must Be in the Same Right**

The Code defines "debt" as "liability on a claim," 11 U.S.C. § 101(11), and a "claim" as a "right to payment." [4] Little has been written regarding the "same right" requirement for mutuality, other than the recognition that a pre-petition debt cannot offset a post-petition debt. *In re NTG Indus., Inc., supra*. The parties have stipulated that both Hartford's claims against BSY and BSY's claim against Hartford arose pre-petition.

**(2) The Debts Must Be Between the Same Parties**

The only parties involved in the present question are BSY and Hartford. None of the problems associated with debts being between or among different parties exist in this case. *See Gray v. Rollo*, 85 U.S. (18 Wall.) 629, 21 L.Ed. 927 (1873) (mutuality is lacking where a partnership has a claim against an individual, but that individual has a claim against only *one* of the partners). This Court finds that the "same parties" requirement is satisfied.

**(3) The Parties Must Be Standing in the Same Capacity**

██ The parties to a setoff not only must be the same, but they also must be standing in the same capacity in relation to each other. Where the parties are identical but they stand in different relationships in the various transactions, mutuality does not exist and setoff is impermissible. For example, courts have held that a bank cannot set off monies deposited by a debtor in individual retirement accounts against a debt owed by the debtor to the bank, because the bank holds the debtor's deposits in the capacity of a trustee, and not as a creditor of the debtor/depositor, *In re Mastroeni*, 57 B.R. 191 (S.D.N.Y.1986); *In re McDaniel*, 41 B.R. 132 (Bankr.W.D.Tex. 1984); and that, where a debtor sent particular equipment to a creditor for repair, the equipment represented a bailment, thereby

---

**4.** More fully, the Code defines a "claim" as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(11).

precluding the creditor from applying the value of the equipment against the debt that the debtor owed the creditor, *In re Brendern Enters., Inc.*, 12 B.R. 458 (Bankr.E.D.Pa.1981). *See also Libby v. Hopkins*, 104 U.S. 303, 26 L.Ed. 769 (1881); *In re Esgro, Inc.*, 645 F.2d 794 (9th Cir. 1981); *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830 (Bankr.S.D.N.Y. 1990).

On the BSY Bonds, which are the basis of the debt that BSY owes Hartford, the parties have stipulated that BSY was the principal and Hartford was the surety. It was the default of BSY on these bonds and Hartford's subsequent payment on them that created the debt from BSY to Hartford.

█ On the Vappi Bond, which is the basis of the debt from Hartford to BSY, Hartford was again involved as a surety, but BSY stood in the position of a subcontractor and not as principal. In this second relationship, it is not any action of BSY that created the debt but instead the failure of Vappi, the principal on the bond, to pay its subcontractor, BSY. Nevertheless, the Court's review of the Vappi Bond reveals that Vappi's breach of contract gave BSY a direct remedy against both Vappi as principal and Hartford as surety for the penalty of the bond. Hartford has failed to point to any language in the Vappi bond that would warrant the conclusion that Hartford's obligation was different from that of its principal Vappi. Accordingly, the Court concludes that when Vappi defaulted Hartford could have been and indeed was sued by BSY. Although proceedings were commenced initially against Vappi, BSY had an independent right to proceed against Hartford alone. *Powers Regulator Co. v. United States Fidelity & Guar. Co.*, 7 Mass.App.Ct. 913, 388 N.E.2d 1205 (1979). In that case, the Massachusetts Appeals Court stated:

> By the express terms of G.L. c. 149 § 29A, the plaintiff, as a supplier of materials to whom payment was due, could bring an action on the bond directly against the surety. "The purpose of § 29A was to create a statutory excep-

tion to the rule of law in this Commonwealth which had been held to preclude recovery under a contract by a third-party beneficiary." *M. Lasden, Inc. v. Decker Electric Corp.*, 372 Mass. 179, 182 [360 N.E.2d 1068] (1977). The statute "should be broadly construed to effectuate its self-evident policies." *Id.* at 183 [360 N.E.2d 1068]. It is not a requirement of § 29A that a supplier be named in the bond as an obligee in order to sue thereon; nor does the statute distinguish between a bond given by a general contractor to the owner and one given by a subcontractor to the general contractor. *Compare* 17 Am.Jur.2d Contractors' Bonds §§ 15 and 16 (1964). Cases reaching the same result in the absence of such a statute include *Pacific States Electric Co. v. United States Fidelity & Guaranty Co.*, 109 Cal.App. 691, 694 [293 P. 812] (1930); *Pacific National Fire Insurance Co. v. Cummins Diesel of Georgia, Inc.*, 213 Ga. 4, 7 [96 S.E.2d 881] (1957); *Fidelity & Deposit Co. v. Pittman*, 52 Ga.App. 394, 398–399 [183 S.E. 572] (1936); *Griffith v. Stucker*, 91 Kan. 47, 52–53 [136 P. 937] (1913); *Parliament Insurance Co. v. L.B. Foster Co.*, 533 S.W.2d 43, 50 (Tex.Ct.Civ. App.1975).

*Id. See generally* 74 Am.Jur.2d *Suretyship* § 135 (1974) ("... a creditor's right to proceed against the surety exists independently of his right to proceed against the principal.").

In view of this analysis, the conclusion is inescapable. Under Massachusetts law, Hartford is directly liable to BSY under the Vappi Bond. Additionally, it has a right to be indemnified by BSY pursuant to the BSY Bonds. Therefore, the requirements that the parties be standing in the same right and capacity articulated by the Court of Appeals for the First Circuit are satisfied and setoff is permissible. Although the court in *In re Sherman Plastering*, 346 F.2d 492 (2d Cir.1965), did not articulate its reasons for finding that all the requirements for mutuality existed, the facts and reasoning of that case unequivocally support the same outcome in this case. *See also Hayden v. Standard Acci-*

*dent Ins. Co.*, 316 F.2d 598 (9th Cir.1963) (cattle dealer bond surety who paid full amount of bond had an indemnification claim which could be set off against its debt to the bankrupt estate stemming from a claim on a yacht insurance policy held by the debtor). Moreover, the facts in the cases cited by the Trustee are distinguishable from the facts in this case for the reasons stated by Hartford and set forth in Section II of this opinion.

### C. *Equity Considerations*

BSY makes additional arguments based on equitable considerations that this Court need not discuss in depth. The Court has considered the equities involved and has determined that disallowing a setoff in this instance is unwarranted. *Cf., Gray v. Rollo*, 85 U.S. (18 Wall.) at 633 (the mutuality requirement should not bar setoff where "the justice of the particular case requires ... [setoff], and ... injustice would result from refusing it.") Thus, Hartford's Motion for Summary Judgment is hereby allowed and the Trustee's Motion for Summary Judgment is denied.

The foregoing shall constitute findings of fact and rulings of law in accordance with Federal Rule of Bankruptcy Procedure 7052. An appropriate order shall issue.