**In re Karl V. ANTON, Jr., Debtor.**

**Bankruptcy No. 092–70120–21.**

United States Bankruptcy Court, E.D. New York.

Oct. 16, 1992.

See also 145 B.R. 767.

Mark N. Parry, Sheri Cavanaugh, Moses & Singer, New York City, for Norstar Bank.

Robert K. Malone, Shanley & Fisher, New York City, for debtor.

David A. Sloane, Mars, Sloane & Conlon, pro se.

Scott Stuart, Office of the U.S. Trustee, Garden City, N.Y.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Before the Court is a motion by Norstar Bank[1] ("Norstar") for an order pursuant to 11 U.S.C. § 362(d) and § 553(a) granting it relief from the automatic stay in this voluntary Chapter 11 proceeding filed by Karl V. Anton, Jr. ("Anton" or "Debtor"). Norstar seeks relief from stay so that it may set off against the money owed it by Anton the amount in a bank account[2] maintained at Norstar in the name of Karl V. Anton, Jr., which Anton asserts is an escrow account in which a third party has an interest. A hearing was held and evidence taken.

## FINDINGS OF FACT

The Debtor is engaged in the business of real estate development and ink distribution.

Norstar extended a $1,000,000 credit line to the Debtor sometime in September, 1989, and by February, 1990, the Debtor owed Norstar $950,000. The loan was originally to mature on February 19, 1991, but was extended one year by agreement dated March 1, 1991. Pursuant to that agreement, Anton paid a portion of principal and interest each month. At the time Anton filed for relief under Chapter 11, he owed Norstar $764,958.91.

On December 20, 1989, Anton entered into a contract for the sale of a restaurant to Fiore Marine Development Corporation ("Fiore Marine"). The contract called for a payment to be held in escrow by Mars, Sloane & Conlon, Esqs. ("MSC") until closing. On December 22, 1989, $100,000[3] was deposited by MSC into a single attorney trust account, # 223–839574, at North Fork Bank & Trust Co. ("North Fork"). There was a second deposit of $200,000 on March 16, 1990. In June, 1990, a dispute developed with respect to the sale, and Fiore Marine filed suit against Anton, MSC as escrow agent and a third party. That suit is still pending.

In September, the parties to the litigation agreed that the $300,000 placed in escrow with MSC should be divided into three $100,000 accounts in three separate banks. The purpose of the division was to safeguard the full amount of the escrow in light of Federal Deposit Insurance Corporation regulations which insured bank deposits only up to $100,000. Pursuant to that agreement, which was reduced to a stipulation dated September 27, 1990, MSC transferred two-thirds of the principal and interest on deposit. at North Fork to two new interest-bearing accounts: an account at Union Savings Bank, and the account currently in dispute at Norstar.

North Fork was instructed to transfer $200,000 from the special trust account to

---

1. Norstar Bank is the original movant. At some point while this motion was pending, Fleet Bank became Norstar's successor-in-interest, and subsequent papers have been filed by Fleet Bank f/k/a Norstar Bank. However, for simplicity, this Opinion will refer to Norstar throughout.

2. Norstar's motion also sought relief from stay for the purpose of setting off a money market checking account, no. 143–0305–00. On May 15, 1992, this Court entered an Order allowing Norstar to set off that account, because the debtor did not dispute Norstar's right to setoff with respect to those funds.

3. David Sloane, a principal of MSC, first submitted an attorney's certification in opposition to Norstar's motion in which he stated that the initial escrow deposit was $75,000. However, a later certification, which he testified at trial "really clarifies the original certification as far as dates, et cetera, and amounts," recites that $100,000 was deposited. The original certification is concededly erroneous in several other minor respects. The Debtor's Exhibit C, an Attorney Trust Account Ledger for the Anton account, establishes that the initial deposit was $100,000.

the Escrow Master Account ("EMA") maintained by MSC. On the Attorney Trust Account Ledger maintained by MSC, the name of the payee of this $200,000 was entered as Karl Anton, Jr.

The same day, September 14, 1990, a check for $100,000 was drawn on MSC's EMA account. The title of that account, printed on the face of the check is "Mars, Sloane & Conlon, E.M.A. Transfer Account." The check was payable to the order of "Mars Sloane & Conlon, as Attorneys." In its lower left-hand corner, the check carried the notation "For Karl V. Anton, Jr."

The check was not deposited immediately. It was not deposited until September 24, 1990 when the account here in question, Account Number 411017262, was opened at Norstar. The account was opened in the name of "Karl V. Anton, Jr., c/o Mars, Sloane & Conlon as Attorneys, 1770 Motor Parkway, Hauppauge, N.Y. 11788."

MSC sent a bookkeeper employed by the firm, Donna Gregory, to Norstar to open the account. Neither she nor the bank employee with whom she dealt was called as a witness.

The signature card which opened the account was signed by Mr. Sloane. In the space on the card calling for the identification of the signatory, the Social Security number of Mr. Anton was inserted. Printed on the face of the signature card signed by Mr. Sloane appears the following printed legend: "This application includes terms on reverse side." On the reverse side the following appears:

> By signing the front of this card I certify that all statements are true and complete and authorize you to make any inquiries you deem necessary in processing this account or in collection of any credit extended … I also agree to the terms and conditions of this account as described in the depositor's agreement.

Mr. Sloane has no recollection of seeing the depositor's agreement referred to on the signature card. The depositor's agreement currently in use explicitly spells out the Bank's right to offset against the ac-

count any money owed the Bank by the depositor.

The sole deposit made in this account was the $100,000 check earlier drawn by MSC to its own order. The check was endorsed, "for deposit Mars Sloane & Conlon 411–017262." The deposit ticket identified the deposit as made to "Karl V. Anton, Jr., Mars Sloane & Conlon, as attorneys."

When the account here involved was opened, Norstar had in effect special internal procedures which were to be followed when an attorney trust account is opened. These procedures were not followed.

There is no evidence that anyone at Norstar was advised orally or in writing when the account was opened that the account was an attorney trust account.

The monthly statements for the account were sent to MSC. The name of the account shown on the statements is "Karl V. Anton Jr., c/o Mars Sloane & Conlon Atty, 1770 Motor Parkway, Hauppauge NY 11788." The account is identified as "Account No. 0411–017262 Money Market Savings Business," and it is not identified as an escrow account. Despite having received these statements for almost a year, MSC never attempted to clarify the status of the account with Norstar until after Norstar asserted its right to setoff.

In July, 1991 Anton defaulted on his loan to Norstar. As a result of that default, Norstar is owed in excess of $750,000. Judgment by Confession was entered in favor of Norstar and against Anton on August 5, 1991, in the amount of $950,000 plus costs of $195. On August 20, a partial satisfaction of judgment was filed. The sum of $763,931.51 remains unpaid.

On August 12, 1991, Anton filed for relief under Chapter 11. On that same date, he applied for and received an Order extending for thirty days his time to file schedules and statements, asserting that "Because of the complicated nature of the Debtor's own personal business affairs and the vast personal holdings, relevant and required information needed to properly complete the schedules and the statement is not immediately available." Annexed to his petition was a list entitled "Bank and

Related Accounts" which showed the Norstar account as a "Money Market Savings" in the name of "Karl V. Anton, Jr." with the authorized signor to be "Karl V. Anton, Jr."

Norstar, on Feb. 21, 1992, filed a proof of claim in this proceeding showing a secured claim of $107,457.11 by way of setoff, and an unsecured, nonpriority claim of $657,-501.80, for a total claim of $764,958.91.

Norstar did not know that the account opened by MSC in the name of Karl V. Anton, Jr. was an escrow account. No facts known to Norstar put it on notice that it was an escrow account or created a duty to inquire.

MSC failed to ensure that the account it opened with Norstar in the name of Anton was identified as an escrow account in which someone else had an interest.

Norstar seeks to offset, pursuant to 11 U.S.C. § 553(a), the sum of $107,995.62, plus interest, which is the total amount on deposit at Norstar as of April 17, 1992 against the debt owing to Norstar by the Debtor. Norstar asserts that under state law, and 11 U.S.C. § 553, a bank demand deposit creates a debtor-creditor relationship regarding those funds and that the Code does not alter that right, but merely requires a creditor to move for relief from stay. Norstar argues that it is entitled to relief from stay pursuant to 11 U.S.C. § 362(d)(1) and (2), because Anton cannot provide it with adequate protection and because Anton has no equity in the account and the account is not necessary for an effective reorganization.

**4.** In relevant part, section 362 provides:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor ...

**5.** New York's Debtor and Creditor Law, § 151, grants a statutory right of set off against unmatured debts. It provides:

Every debtor shall have the right upon: (a) the filing of a petition under any of the provi-

## DISCUSSION

■ The setoff by a creditor of a debt owed by it to the debtor against its claim against the debtor is explicitly stayed by 11 U.S.C. § 362(a)(7).[4] The stay does not defeat a creditor's right of setoff; rather, setoff is stayed pending an orderly examination of the debtor's and creditor's rights. H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977) U.S.Code Cong. & Admin.News pp. 5787, 6296, 6297. A creditor seeking to exercise a post-petition setoff must first move for relief from the stay.

The right of setoff is explicitly recognized by 11 U.S.C. § 553(a) which provides:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ...

■ Section 553 does not create any new right of setoff where none existed under nonbankruptcy law, but merely recognizes the existence of the doctrine and puts some additional restrictions on its exercise. 4 Lawrence P. King, *Collier on Bankruptcy* ¶ 553.02 (15th ed. 1992) [hereinafter *Collier*]; H.R.Rep. No. 595, 95th Cong., 1st Sess. 185 (1977), U.S.Code Cong. & Admin.News pp. 5787, 6145, 6146. Thus, the Code looks to state law to determine the right of setoff.[5]

sions of the federal bankruptcy act or amendments thereto ... by or against a creditor;

\*   \*   \*   \*   \*   \*

to set off and apply against any indebtedness, whether matured or unmatured, of such creditor to such debtor, any amount owing from such debtor to such creditor, at or at any time after, the happening of any of the above mentioned events, and the aforesaid right of set off may be exercised by such debtor against such creditor or against any trustee in bankruptcy, debtor in possession, assigned for the benefit of creditors, receiver or execution, judgment or attachment creditor of such creditor, or against anyone else claiming through or against such creditor or such trustee in

There is no question that Norstar would have had the right to set off against the amount owed it by Anton the funds in the account maintained in his name at the Bank but for the claim that a third party has an interest in the money and that the account was intended to be an escrow account and that it, therefore, is not the property of Anton.

██ Where a bank holds funds of the debtor in a special account, known by the bank to be dedicated to a special use, the bank cannot set off those funds against its claim against the debtor. 4 *Collier* ¶ 553.-04; *Spencer Cos. v. Chase Manhattan Bank, N.A.*, 81 B.R. 194 (D.Mass.1987). Accounts which are devoted to one or only a few purposes are most clearly special deposits not subject to setoff, as are accounts in which persons other than the depositor have an interest. *Spencer Cos.*, 81 B.R. at 200 (applying New York and Massachusetts law).

Under New York law, "[i]n the absence of an agreement and proof to the contrary, a deposit is presumed to be general rather than special and the burden devolves on the party who claims that the deposit is a special one to show that it was received by the bank with the express or clearly implied agreement that it should be kept separate from the general funds of the bank and that it should remain intact." *Noah's Ark Auto Accessories, Inc. v. First Nat'l Bank*, 64 Misc.2d 944, 316 N.Y.S.2d 663, 665 (Sup. Ct.1970), *aff'd* 37 A.D.2d 692, 323 N.Y.S.2d 408 (1971) *appeal denied* 29 N.Y.2d 485, 325 N.Y.S.2d 1025, 274 N.E.2d 753 (1971) (*quoting* 5 N.Y.Jur. § 224).

██ To defeat a Bank's right of setoff on the ground that a third party has an interest in the account, it must be shown that the bank either had knowledge of the third party's interest or had knowledge of sufficient facts to put it on inquiry. *Gerrity Co. v. Bonacquisti Constr. Corp.*, 156 A.D.2d 800, 549 N.Y.S.2d 532 (1989) *appeal denied*, 75 N.Y.2d 708, 554 N.Y.S.2d 833, 553 N.E.2d 1343 (1990); *In re Applied*

*Logic Corp.*, 576 F.2d 952, 964–965 (2d Cir.1978); *In re Goll*, 8 F.2d 101 (S.D.N.Y. 1925); *In re Greater Pythian Temple Ass'n*, 19 F.Supp. 762 (S.D.N.Y.1937); *In re Wilde*, 85 B.R. 147, 150 (Bankr.D.N.M. 1988); *see also, Commercial Nat'l Bank v. Stockyards Loan Co.*, 16 F.2d 911, 916 (8th Cir.1926), *cert. denied*, 275 U.S. 547, 48 S.Ct. 84, 72 L.Ed. 418 (1927).

In *Greater Pythian*, the Court articulated the general rule as follows:

> If the bank had no notice that the funds in the special account were funds held by the debtor in a trust capacity, it had the right to apply such funds toward payment of the claim held by it against the debtor.

*Greater Pythian*, at 764.

In *Goll*, Judge Bondy held that the right of setoff exists regardless of whether the bank makes any advances or otherwise changes its position as a result of the deposit. The Court said:

> [I]f funds in which third persons have an interest are deposited in the individual name of the depositor in a bank which has neither actual notice nor notice of facts sufficient to put it on inquiry as to the true character of the deposit, it may apply the deposit to the payment of the individual debt of the depositor to the bank, and may do so whether or not it made any advances or otherwise changed its position on the faith of such deposit.

*In re Goll, supra*, 8 F.2d at 102 (and cases there cited).

██ There is no claim made here that Norstar had any knowledge of the interest of Fiore Marine in the account or even knew that it was an escrow account. Likewise, nothing was proved by Anton or MSC regarding the circumstances under which the account was established that would put Norstar on inquiry.

The account appears to have been opened as an ordinary individual account. Whether Sloane read the depositor's agreement or not, he is bound by its terms as is Anton

---

bankruptcy, debtor in possession, assignee for the benefit of creditors, receivers, or execution, judgment or attachment creditor, notwithstanding the fact that such right of set off shall not have been exercised by such debtor

prior to the making, filing or issuance, or serviced upon such debtor of, or of notice of, any such petition ...

N.Y. Debtor & Creditor Law § 151 (McKinney 1990 & Supp.1992).

who made MSC his agent. The fact that the address given was that of a firm of attorneys or that only the attorney was an authorized signatory did not alone, or together with the few other straws to which Anton points, suggest a need for further inquiry. Many persons use their attorneys as mail drops or give them power of attorney over their affairs.

The mere fact that an attorney opens an account does not indicate in any way that the account is an attorney trust account. Indeed, to the contrary, attorney trust accounts are to be opened in the name of the attorney or of his law firm. Section 1200.-46(b) of the New York Code of Rules and Regulations governing attorneys specifically requires that an attorney in possession of funds belonging to another person incident to his practice of law shall maintain those funds "in the lawyer's own name, or in the name of a firm of lawyers of which he or she is a member, or in the name of the lawyer or firm of lawyers by whom he or she is employed." N.Y.Comp. Codes R. & Regs. tit. 22, § 1200.46(b) (1991).

Nevertheless, the account at Norstar was opened in the name of Karl V. Anton, Jr.; MSC failed to open the account in its own name, despite its familiarity with the appropriate procedure for opening an attorney trust account. By failing to observe the requirements of New York law, MSC created the present situation. Its failure to observe the usual procedures reinforces all of the other facts entitling the Bank to rely on the appearance of the account and deem the account to be Anton's. Whether the Anton account was intended to be an escrow account or not, what was opened was a money market account against which Norstar is entitled to set off, and not an escrow account.

Here, as in the other cases where the courts have sustained the right of setoff, the Anton account was opened in the Debtor's name, and the tax identification number given for it was the Debtor's Social Security number. The bank statements clearly identify the depositor as Karl V. Anton, Jr., and there is no indication of a relationship between the Debtor and any third party or that the account was a trust account.

In *Applied Logic, supra,* the Second Circuit recognized that the rule allowing setoff is one "that has been embodied in every bankruptcy act the nation has had, and creditors, particularly banks, have long acted in reliance upon it." *Applied Logic,* 576 F.2d at 957–58 (footnote omitted) (*citing Studley v. Boylston Nat'l Bank,* 229 U.S. 523, 529, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913)). *See also, In re De Laurentiis Entertainment Group, Inc.,* 963 F.2d 1269 (9th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992). The Court said in *Applied Logic:* "The rule allowing setoff, both before and after bankruptcy, is not one that courts are free to ignore when they think application would be 'unjust'." *Applied Logic, supra,* at 957.

Accordingly, Norstar is entitled to relief from the automatic stay to allow it to set off the Anton account against its claim against Anton.

Settle Order in accordance with this Opinion.