In re **WESTCHESTER STRUCTURES, INC.,** Debtors.

Bruce D. **SCHERLING,** as Trustee of **Westchester Structures, Inc.,** Plaintiff,

v.

**HELLMAN ELECTRIC CORPORATION,** Defendant.

Bankruptcy No. 93 B 40685.
Adv. No. 94–8347A.

United States Bankruptcy Court, S.D. New York.

Feb. 17, 1995.

---

R. Funicello, Vincent A. DeIorio Law Firm, Purchase, for Hellman Elec. Corp. (HEC).

G.P. Rech, Scherling, Davidson & Rech, P.C., New York City, for Bruce D. Scherling, Trustee (Trustee) of Westchester Structures, Inc. (Debtor).

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

FRANCIS G. CONRAD,* Bankruptcy Judge.

The matter before us [1] concerns the application of the statutory trust provisions of Article 3A of the New York Lien Law to the relationship between a contractor and subcontractor involved in a contract for public improvement. The first issue is whether the subcontractor, HEC, has asserted its trust claim under New York Lien Law § 77 in a timely manner and in an appropriate procedural form. The second issue is whether the contractor, Debtor, may offset its claim for

---

* Sitting by special designation.

1. Our subject matter jurisdiction over this controversy arises under 28 USC § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 USC §§ 157(b)(2)(A) and (B). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52 as made applicable by F.R.Bkrtcy.P. 7052.

property held in trust by HEC against HEC's claims against Debtor, including HEC's claim for property held in trust by Debtor. Also presented is Debtor's attempt to offset the claims of a related entity against the claims of HEC.

We hold that, under the particular facts before us, HEC's trust claim conforms to the procedural requirement of the statute. HEC appears in a representative capacity for the benefit of all other subcontractors because it is the only party with a claim to funds under this contract. In addition, with respect to at least one subcontract, HEC has asserted its claim in a timely manner.

We also hold that neither party may offset general unsecured claims against trust obligations. Further, Debtor may not offset its related company's claims against any of HEC's claims. We defer ruling on the application of setoff to competing trust fund obligations until Trustee establishes at trial that HEC indeed holds trust funds for the benefit of Debtor.

### Facts

Debtor was a general contractor in various contracts with the Port Authority of New York and New Jersey. HEC was a subcontractor to Debtor on the Port Authority contracts. HEC filed a proof of claim in Debtor's bankruptcy case asserting a secured interest for unpaid labor and materials it furnished as subcontractor under certain contracts totaling $491,060.78. The proof of claim also asserts a claim based on a judgment secured for this amount.

Prior to Debtor's filing of its Chapter 11 bankruptcy petition, HEC obtained a judgment against Debtor in New York Supreme Court for nonpayment on the Port Authority contracts, interest and costs in the amount of $491,060.78. A restraining notice and execution was served on the Port Authority. Later, the Port Authority acknowledged that it held money owed to Debtor on certain contracts and was prepared to divide the money pro rata to subcontractors who were entitled to payment on those contracts. Proof was submitted by HEC to the Port Authority of its participation in five of those contracts. HEC had entered into written subcontracts with Debtor on those five contracts. The Port Authority acknowledged in five separate letters, one for each contract, that it was holding a total of $223,675.65 due to HEC on those contracts [2] and was prepared to pay that amount to HEC upon HEC's submission of releases and indemnity agreements. Two of these letters were mailed just prior to Debtor's bankruptcy filing, the other three letters were mailed after the filing. In any case, all the letters were received by HEC after the filing and HEC could not submit the releases and indemnity agreements before Debtor filed for bankruptcy.

After the conversion of Debtor's bankruptcy case to Chapter 7, Trustee commenced an adversary proceeding against the Port Authority seeking turnover of funds held by the Port Authority, including the $223,675.65 held by the Port Authority allegedly in trust for HEC. The Port Authority settled the adversary proceeding with Trustee. In compliance with that court approved settlement, the Port Authority paid the funds, including HEC's putative trust funds, to Trustee. The settlement required Trustee to place the alleged trust funds "in a segregated, interest bearing account" until the Court determined the respective rights to the funds of Trustee and HEC.

Next, Trustee commenced an adversary proceeding against HEC seeking a declaration that HEC's claim was unsecured and a setoff for $118,750 [3] allegedly due to Debtor and $67,500 allegedly due to T.O.T.S., Inc., a company related to Debtor. HEC counterclaimed and sought turnover of the $223,675.65 tendered by the Port Authority to Debtor plus attorney's fees, because it maintains that it is a trust beneficiary for that amount pursuant to New York Lien Law § 70.

**2.** The five contracts and the amount due on each are:

| | |
|---|---|
| JFK–601 | $ 20,683.87 |
| JFK–220.073 | $ 28,578.37 |
| LGA–320.052 | $116,600.07 |
| LGA–220.036 | $ 40,287.78 |
| LGA–110.077 | $ 17,525.56 |
| Total | $223,675.65 |

**3.** Debtor later amended this amount to $116,337.62.

HEC moved for summary judgment to dismiss the complaint and for judgment on its counterclaim. HEC maintains that, under sections 70 and 71 of New York Lien Law, it acquired its statutory trust fund lien at the time it entered into the subcontracts. HEC asserts that the $223,675.78 the Port Authority acknowledged it held for HEC is HEC's property and not property of the estate.

Trustee argues that HEC's effort to enforce the trust is not timely because the claim should have been asserted within one year of the completion of the public improvement. Trustee further states that HEC is pursuing its trust claim in a procedurally defective manner because, under New York Lien Law § 77, HEC should pursue its claim in a representative capacity for the benefit of all parties entitled to trust claims under the contract.

Trustee also argues that if the court determines that the funds are trust funds, Trustee may offset against that amount moneys that are owed to Debtor from HEC on another contract and moneys HEC owes to T.O.T.S., Inc. The amount owed by HEC to Debtor, which Trustee seeks to offset, are sums due under a separate construction contract on which both Debtor and HEC were subcontractors, the Microwave Landing System Phase II contract (Phase II). HEC counters that there is no right to setoff because none of the moneys paid by the Port Authority to Trustee relate to the Phase II contract. Additionally, HEC asserts that Trustee has no right to setoff against amounts owed to the debtor's related entity, T.O.T.S., Inc. HEC also argues that it has the right to offset its total $491,060.78 claim against the amount that Trustee claims HEC owes to Debtor.

### Discussion

Under New York Lien Law, funds received by a contractor or subcontractor in connection with a contract for a public improvement, and any right of action for any such funds due or earned or to become due or earned, are assets of a trust, N.Y.Lien Law § 70(1).[4] These trust assets are to be held for the benefit of "subcontractors, architects, engineers, surveyors, laborers and materialmen" who contributed to the improvement under the contract. N.Y.Lien Law § 71(2)(a).[5] Thus, the trust assets of which a contractor or subcontractor is trustee shall be held and applied for the payment of claims asserted by these parties. § 71(2)(a).

HEC asserts that, at the time HEC entered into the five subcontracts with Debtor, it became the trust beneficiary of the funds subsequently turned over to Trustee by the Port Authority.

N.Y.Lien Law provides that a trust claim comes into "existence from the time of the making of the contract" out of which the claim stems. N.Y.Lien Law § 71(5).[6] The trust commences when any asset of the trust "comes into existence, whether or not there shall be at that time any beneficiary of the trust." N.Y.Lien Law § 70(3). The N.Y.Lien Law further provides that the trust

4. N.Y.Lien Law § 70(1) provides in relevant part:
 The funds ... received by a contractor under or in connection with a contract for an improvement of real property, or home improvement, or a contract for a public improvement in this state, or received by a subcontractor under or in connection with a subcontract made with the contractor for such improvement of real property including a home improvement contract or public improvement or made with any subcontractor under any such contract, and any right of action for any such funds due or earned or to become due or earned, shall constitute assets of a trust for the purposes provided in section seventy-one of this chapter.

5. N.Y.Lien Law § 71(2) provides in relevant part:
 The trust assets of which a contractor or subcontractor is trustee shall be held and ap-

plied for the following expenditures arising out of the improvement of real property, including home improvement or public improvement and incurred in the performance of his contract or subcontract, as the case may be:
 (a) payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen; ...

6. N.Y.Lien Law § 71(5) provides in relevant part:
 [E]very trust claim shall be deemed to be in existence from the time of the making of the contract or the occurrence of the transaction out of which the claim arises and ... the rights of each member of the class of beneficiaries accrue at the making of the contract or the occurrence of the transaction out of which the claim arises.

continues with respect to all trust assets until all trust claims that arise at any time prior to the contract or subcontract's completion have been paid or discharged, or until all those assets are applied for the purposes of the trust. N.Y.Lien Law § 70(3).[7] A bankruptcy court has noted that "the policy behind the New York Lien Law is to impress a trust on the monies received by the contractor and have that trust continue until the claims of all the beneficiaries have been paid[.]" *Cooper v. Grisofe Electric Corp., (In re Building Dynamics, Inc.)*, 134 BR 715, 717 (Bkrtcy. W.D.N.Y.1992).

Thus, each of HEC's five trust claims came into existence when HEC entered into each subcontract with Debtor. The trust associated with each separate contract commenced when the Port Authority acknowledged funds were available that were due on the respective Port Authority contracts related to those subcontracts.

■ HEC maintains that the trust funds formerly held by the Port Authority, and now held in a segregated account by Trustee, are HEC's property and that Debtor's estate has no interest in that property.

In *Aquilino v. United States*, 10 N.Y.2d 271, 277, 176 N.E.2d 826, 829, 219 N.Y.S.2d 254, 259 (1961), the New York Court of Appeals was called upon to interpret the effect of the trust provisions of N.Y.Lien Law § 36–a, the predecessor section to current Article 3–A of N.Y.Lien Law § 70–79. In *Aquilino*, a contractor entered into subcontracts to improve real property. The owner of the property deposited the funds payable on the improvement into the court for the court to determine whether a tax lien asserted by the United States against those funds was superior to the trust claims advanced by subcontractors. On remand from the United States Supreme Court, the New York Court of Appeals was required to "ascertain the property interests of the [contractor] under state law" to the funds. *Aquilino, supra*, 10 N.Y.2d at 274, 176 N.E.2d at 828, 219 N.Y.S.2d at 256, *on remand from, Aquilino*

*v. United States*, 363 U.S. 509, 515–516, 80 S.Ct. 1277, 1281, 4 L.Ed.2d 1365. Specifically, the court was required to determine whether, under the applicable N.Y.Lien Law provisions, a "contractor-taxpayer holds bare legal title to the sum due from the owner, as trustee for the subcontractors, or whether it has full ownership of the debt, subject only to a lien in favor of the subcontractors." *Aquilino, supra*, 10 N.Y.2d at 274, 176 N.E.2d at 828, 219 N.Y.S.2d at 256. The New York Court of Appeals was instructed by the United States Supreme Court to look to state law to determine "to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach," *Aquilino, supra*, 363 U.S. at 512, 80 S.Ct. at 1280, because of "the legitimate and traditional interest which the State has in creating and defining the property interest of its citizens[.]" *Aquilino, supra*, 363 U.S. at 514, 80 S.Ct. at 1281. The New York Court of Appeals felt that the legislature's aim in enacting the trust sections of the lien law was to assure that funds derived from improvements to real property would reach material and labor, thus protecting "those whose skill, labor and materials made possible the performance of a construction contract," that is, those who created the improvement and "gave rise to the owner's obligation to pay." *Aquilino, supra*, 10 N.Y.2d at 279, 176 N.E.2d at 830, 219 N.Y.S.2d at 260. The legislative policy was to protect laborers and materialmen. *Id.*, 10 N.Y.2d at 281, 176 N.E.2d at 832, 219 N.Y.S.2d at 262. The New York Court of Appeals concluded that under New York law "a contractor does not have a sufficient beneficial interest in the moneys, due or to become due from the owner under the contract, to give him a property right in them" except if there is a balance after subcontractors were paid. *Id.*, 10 N.Y.2d at 282, 176 N.E.2d at 832, 219 N.Y.S.2d at 262–63. *See, also, In re Dunwell Heating & Air Conditioning Contractors Corp.*, 78 B.R. 667, 670 (Bkrtcy. E.D.N.Y.1987) ("[T]he beneficial interests of subcontractors and materialmen held by the

---

7. N.Y.Lien Law § 70(3) provides in relevant part:
 The Trust of which a contractor or subcontractor is trustee shall continue with respect to every asset of the trust until every trust claim arising at any time prior to the completion of the contract or subcontract has been paid or discharged, or until all such assets have been applied for the purposes of the trust.

debtor in a statutory trust are not property of the debtor or of the bankruptcy estate.") Therefore, if HEC may enforce its Article 3A trust, the $223,675.65 is HEC's property and Debtor has no property interest in the funds.

New York Lien Law § 71(4) provides that parties with trust claims are beneficiaries of the trust regardless of whether or not they filed a notice of lien or recovered a judgment.[8]

The court in *Aquilino*, 10 N.Y.2d at 277, 176 N.E.2d at 829, 219 N.Y.S.2d at 259, in interpreting the predecessor to section 70, section 36–a, found that a subcontractor could enforce its interest whether or not it had filed a notice of lien.

Thus, Trustee holds the funds derived from the five Port Authority contracts in trust for HEC without the requirement that HEC file a notice of lien or obtain a judgment against Debtor.

█ Trustee next argues that HEC was required to perfect and enforce the trust fund lien by starting an enforcement action under N.Y.Lien Law § 77.[9] Trustee argues that under that section, HEC is time barred from asserting its trust fund claim because, under N.Y.Lien Law § 77(2), the claim should have been asserted no later than one year after the completion of the improvement. Trustee also argues that the effort by HEC to enforce the trust is procedurally defective because N.Y.Lien Law § 77 requires the action to be maintained in a representative capacity for the benefit of all beneficiaries of the trust.

In support of the proposition that the action should have been maintained by HEC in a representative capacity for the benefit of all trust beneficiaries, Trustee cites *In re Grosso*, 9 B.R. 815, 822 (Bkrtcy.N.D.N.Y. 1981). The *Grosso* court noted that the purpose of Article 3–A is to ensure that the money paid because of an improvement is "equitably shared" by entities entitled to payment. *Id.* at 823, (citation omitted). If the action is not maintained in a representative capacity, the case posits that there is the likelihood of repetitive litigation by similarly situated creditor-parties. The court further noted that a creditor could start a representative action in a bankruptcy court in an adversary proceeding. *Id.*

The *Grosso* court, however, went on to find that the failure to bring an enforcement action in a representative capacity alone did not warrant dismissal of the action. It noted that the court could permit an amendment of the complaint to allege a claim under the N.Y.Lien Law provisions. *Id.*

In the instant action, HEC notes that because of the Port Authority's earlier efforts to locate all participants in each of the five contracts in order to equitably distribute the funds it held on those contracts, all parties must acknowledge that the only claimant to the $223,675.65 is HEC. Indeed, the stipulation of settlement between the Port Authority and the Trustee recited that the $223,-675.65 turned over to the Trustee represented the "aggregate unpaid amount apportioned to the subcontractor claims of [HEC]."

---

8. N.Y.Lien Law § 71(4) provides in relevant part:
 Persons having claims for payment of amounts for which the trustee is authorized to use trust assets as provided in this section are beneficiaries of the trust whether or not they have filed or had the right to file a notice of lien as provided in article two of this chapter or shall have recovered a judgment therefor.

9. N.Y.Lien Law § 77 provides in relevant part:
 1. A trust arising under this article may be enforced by the holder of any trust claim, including any person subrogated to the right of a beneficiary of the trust holding a trust claim, in a representative action brought for the benefit of all beneficiaries of the trust. An action to enforce the trust may also be maintained by the trustee. . . .

2. Such action may be maintained at any time during the improvement of real property, or home improvement, or public improvement and successive actions may be maintained from time to time during the improvement provided no other such action is pending at the time of the commencement thereof. No such action shall be maintainable if commenced more than one year after the completion of such improvement or, in the case of subcontractors or materialmen, after the expiration of one year from the date on which final payment under the claimant's contract became due, whichever is later, except an action by the trustee for final settlement of his accounts and for his discharge.

The actions of the Port Authority, prior to Debtor filing for bankruptcy, ensures that all participants in the respective contracts would share ratably in the funds derived from those contracts. HEC is merely attempting to enforce the trust action for the benefit of the class comprised of all beneficiaries of the trust by enforcing it for itself, the only member of that class. *See, Davis and Warshow, Inc. v. S. Iser, Inc.*, 30 Misc.2d 528, 540 n. 3, 220 N.Y.S.2d 818, 831 n. 3 (N.Y.Sup.Ct.1961) (the court commented that where there was only one beneficiary under Article 3–A of the N.Y.Lien Law and the contract, and that beneficiary was a party to the action, as were all relevant, interested parties, "to require the institution of a representative action is to exalt form in a situation where substance is not aided by abiding by form.")

■ With respect to the argument that the enforcement action in the instant proceeding is time barred because it was commenced more than one year after completion of the improvement, HEC notes that N.Y.Lien Law § 77(2) provides two additional time frames within which to commence an action to enforce a trust. Subsection (2) of N.Y.Lien Law § 77 provides that, in the case of subcontractors or materialmen, the action to enforce the trust shall not be maintained after, the later of, one year after the completion of the improvement or one year from the date on which final payment under the claimant's contract became due.[10] Thus, subcontractors and materialmen have a potentially longer period in which to enforce their trust claims under this section. The section also provides that the trustee of the trust fund is exempted from the time limitations imposed by the section when the trustee commences an action for final settlement of its accounts and for its discharge.

In the exhibits to HEC's Vice President's affidavit in support of HEC's motion for summary judgment is included a copy of one of the five subcontracts with Debtor in issue.[11]

HEC points to the sixth paragraph of this subcontract which relates to payments under the contract. This section provides:

Final payment shall be made by the Contractor to Sub–Contractor within five days after receipt by Contractor of its final payment from Owner, provided all required guaranties and a general release have been furnished by the Sub–Contractor.

Final payment on this contract did not become due until five days after receipt by Debtor of the final payment from the Port Authority. This did not occur until after the November 1993 settlement of the adversary proceeding Trustee commenced against the Port Authority. Thus, HEC maintains that its trust claim, asserted in a June 24, 1994 counterclaim, was timely filed. The counterclaim was filed before "the expiration of one year from the date on which final payment under [HEC's] contract became due." N.Y.Lien Law § 77(2).

We find, at least with respect to this one subcontract, HEC has timely filed and sufficiently presented its claim to enforce the trust fund claim. With respect to the other four subcontracts, HEC may present evidence at trial as to whether these subcontracts included the same paragraph relating to the due date of the final payment.

### Setoff

■ Trustee maintains that even if these funds are held by Trustee in trust for HEC, Trustee, nevertheless, has the right to offset against that amount, sums due from HEC to Debtor and an amount due from HEC to T.O.T.S., Inc., an entity related to Debtor.

■ The Bankruptcy Code provides for setoff in 11 U.S.C. § 553.[12] This section "is

---

10. Subsequent to the *Grosso* decision, in 1986, N.Y.Lien Law § 77(2) was amended to add the clause that allows subcontractors and materialmen this option to commence an enforcement action up until the latter of these two time frames.

11. The subcontract included as an exhibit was for the contract identified as LGA 320.052. As stated in footnote 2, the amount allegedly held in trust for HEC under this contract is $116,600.07.

12. 11 U.S.C. § 553 provides in relevant part:

Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commence-

not an independent source of setoff rights." *DiCola v. American S.S. Owners Mut. Protection and Indem. Ass'n, Inc. (In re Prudential Lines, Inc.)* 148 B.R. 730, 751 (Bkrtcy.S.D.N.Y.1992), *aff'd in part and rev'd in part on other grounds,* 170 B.R. 222 (S.D.N.Y.1994). It merely preserves for the benefit of the creditor, any right to setoff that the creditor had under applicable non-bankruptcy law, *In re Drexel Burnham Lambert Group, Inc.,* 113 B.R. 830, 839 (Bkrtcy.S.D.N.Y.1990), and adds additional restrictions. *In re Anton,* 146 B.R. 509, 512 (Bkrtcy.E.D.N.Y.1992); *In re Bay State York Co., Inc.,* 140 B.R. 608, 613 (Bkrtcy. D.Mass.1992).

 Section 553 permits a creditor to offset a prepetition debt it owes to a debtor against a prepetition debt due to it from the debtor if the debts are mutual.[13] Debts are mutual when the debts and credits are in the same right and are between the same parties, standing in the same capacity. *Lines v. Bank of America Nat'l Trust & Sav. Ass'n,* 743 F.Supp. 176, 182 (S.D.N.Y.1990). The proponent of setoff must establish all three elements to prove mutuality. *Bay State, supra,* 140 B.R. at 614. The requirement of mutuality is strictly construed against the creditor seeking setoff. *Id.* Courts have interpreted debts in the same right to mean that a "pre-petition debt cannot offset a post-petition debt." *Id.* The second element is that the debts must be between the same parties. Finally, the parties must stand in the same capacity in relation to each other. *Id.* If the same parties are involved but they "stand in *different relationships* in the various transactions, mutuality does not exist

and setoff is impermissible." *Id.* (emphasis ours). Where, for example, one party owes a fiduciary duty to the other, or has a claim for trust funds, and the other side's claim is a simple unsecured debt, mutuality is lacking. *See, Ross–Viking Merchandise Corp. v. American Cyanamid Co. (In re Ross–Viking Merchandise Corp.),* 151 B.R. 71, 73–74 (Bkrtcy.S.D.N.Y.1993).

 The debts do not have to stem from the same transaction to be considered mutual. *Prudential, supra,* 148 B.R. at 751. In fact, ordinarily debts subject to setoff are those that are generated by different transactions because debts that evolve from the same transaction, whether or not they are mutual, are subject to recoupment. *Prudential, supra,* 148 B.R. at 752.

 Finally, we note that the decision whether or not to allow setoff is within the discretion of the bankruptcy court. *Bay, supra,* 140 B.R. at 614.

 Section 553, however, only speaks to the right of a creditor to offset mutual debts. *In re Standard Furniture Co.,* 3 B.R. 527, 531 (Bkrtcy.S.D.Cal.1980) (Section 553 is only applicable to the right of setoff by a creditor); *In re McGuire,* 11 B.R. 649, 650–51 (Bkrtcy.W.D.Pa.1981). A debtor's right to setoff is established, according to one bankruptcy court, "under state law and [§ 502(b)(1)[14]] of the Bankruptcy Code." *In re R. Bastyr and Assocs., Inc.,* 81 B.R. 978, 981 n. 10 (Bkrtcy.D.Minn.1988).

 Section 558[15] of the Bankruptcy Code also preserves for the benefit of the estate any right to setoff the debtor may

---

ment of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

**13.** Other subsections of 11 U.S.C. § 553 place additional restrictions on the creditor's right to setoff in bankruptcy. They are not relevant to the matter before us and we do not address them.

**14.** Section 502 of the Bankruptcy Code relates to the allowance of claims. 11 U.S.C. § 502(b)(1) provides that if an objection to a claim is made, the court shall determine the amount of such claim and allow that claim except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured; . . .

**15.** This section, 11 U.S.C. § 558, provides:

The estate shall have the benefit of any defense available to the debtor as against any entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses. A waiver of any such defense by the debtor after the commencement of the case does not bind the estate.

have. *Second Pennsylvania Real Estate Corp. v. Papercraft Corp. (In re Papercraft Corp.)*, 127 B.R. 346, 349–50 (Bkrtcy.W.D.Pa. 1991) (*Papercraft II*). *See also, Second Pennsylvania Real Estate Corp. v. Papercraft Corp. (In re Papercraft Corp.)*, 126 B.R. 926, 931 (Bkrtcy.W.D.Pa.1991) (*Papercraft I*) ("debtor-in-possession must be able to assert all defenses that debtor could have asserted had bankruptcy not intervened.")

■ In the same manner that we look to the parties agreement and to applicable non-bankruptcy law to ascertain a creditor's right to setoff under 11 U.S.C. § 553, we look to the parties contract and to applicable non-bankruptcy law to ascertain whether a debtor may offset its claim against a creditor's claim under either 11 U.S.C. § 502(b)(1) or 11 U.S.C. § 558. *See, Sylvester v. Martin (In re Sylvester)*, 130 B.R. 930, 939 (Bkrtcy. N.D.Ill.1991) ("Debtor may claim a right to setoff only to the extent that [applicable state] law recognizes it.")

■ The law to be applied to establish whether setoff is permissible is the law of the state where the relevant facts transpired. *Prudential, supra*, 148 B.R. at 751. Debtor and HEC are both New York corporations. Each has its principal place of business in New York. Debtor and HEC entered into the contracts in New York and the work was performed in New York. Thus, we look to New York law to establish the parties' rights to setoff.

Both Trustee and HEC are seeking to offset debts. To allow Trustee to offset, Trustee must show that the debts are mutual under New York law incorporated through 11 U.S.C. § 502(b)(1) or 11 U.S.C. § 558. To avail itself of the right to offset, HEC must show that the debts are mutual under New York law incorporated through 11 U.S.C. § 553.

■ New York recognizes both equitable and statutory setoff. *Prudential, supra*, 148 B.R. at 751. Under New York law, to offset debts, they must be mutual. *Beecher v. Petier A. Vogt Mfg.*, 227 N.Y. 468, 473, 125 N.E. 831 (1920). New York law finds debts are mutual when they are due to and from the same persons in the same capacity. *Id.* Thus, if a bankruptcy debtor is the party seeking to offset a debt, it does not have to establish that the debts between the parties are both prepetition as the bankruptcy creditor is required to do under 11 U.S.C. § 553. *Papercraft II, supra*, 127 B.R. at 350 (Application of New York law through 11 U.S.C. § 558 rather than 11 U.S.C. § 553, eliminates the requirement that the mutual debts both be prepetition obligations.) To establish that the debts are mutual, a bankruptcy debtor, however, must still prove the other elements, namely, that the debts are to and from the same parties in the same capacity. *Vogt, supra*, 227 N.Y. at 473, 125 N.E. at 831. But, the right to setoff is within the court's discretion and it may invoke equity to bend the rules, if required, to avert injustice. *Id.*

■ A source of statutory setoff in New York emanates from New York Debtor and Creditor Law § 151.[16] Under N.Y.Debt. & Cred. Law, the debts to be offset can be matured or unmatured but they cannot be contingent. *Prudential, supra*, 148 B.R. at 752. "An unmatured debt is generally evidenced by a contract and can be expected in the normal course of events to be due and owing in the future, although the obligation has not yet ripened. A contingent liability, however, is marked by uncertainty as to whether any obligation will ever arise." *Id.*

■ N.Y.Debt. & Cred.Law § 151 only applies to the setoff sought by HEC, not by Debtor or Trustee because it allows setoff

---

16. N.Y.Debt. & Cred.Law § 151 provides in relevant part:

Every debtor shall have the right upon:
(a) the filing of a petition under any of the provisions of the federal bankruptcy act or amendments thereto ... by or against a creditor;

. . . . .

to set off and apply against any indebtedness, whether matured or unmatured, of such creditor to such debtor, any amount owing from such debtor to such creditor, at or at any time after, the [filing of the petition] and the aforesaid right of set off may be exercised by such debtor against such creditor or against any trustee in bankruptcy, debtor in possession ...

by one who is owed a debt after the filing of a bankruptcy petition by or against its creditor. In this case, the bankruptcy filing was by Debtor. Thus, under 11 U.S.C. § 553, incorporating N.Y.Debt. & Cred.Law § 151, HEC has the right to offset against any indebtedness of Debtor to HEC, any mutual debt owing from HEC to Debtor.

■ Trustee may avail itself of any equitable setoff recognized under New York Law.

■ The parties in the instant action acknowledge that the debts owed between them are pre-petition and in the same right. With the exception of the debt HEC allegedly owes to T.O.T.S., Inc., they acknowledge that the debts are between the same parties. There is no mutuality between HEC's debt to T.O.T.S., Inc., and Debtor's debt to HEC, under either New York law or 11 U.S.C. § 553, because the debts are not between the same parties. Thus, they are not subject to setoff.

HEC argues that Trustee may not offset against the indebtedness of HEC to Debtor, the amount owed by Debtor to HEC because Trustee holds these funds in a fiduciary capacity, in trust for HEC under the provisions of N.Y.Lien Law §§ 70–77. In that respect, Trustee acknowledges that where a party holds funds in trust, it does not stand in the same capacity as a party who owes it a simple debt; however, Trustee maintains that in the case before us, the capacity of the parties is identical because each holds funds in trust for the other. Each is a trustee for the benefit of the other.

In every case brought to our attention concerning trust funds where the mutual quality of the debts was defeated because the parties did not stand in the same capacities, it was only one of the parties who held funds in trust for the other or in a fiduciary capaci-

ty for the other and the reciprocal debt stemmed from a simple debtor-creditor relationship. The court in *Ross–Viking* noted that "a fiduciary duty or a trust relationship in one of the capacities of a party involved in an attempted setoff will not satisfy the concept of mutuality." *Ross–Viking, supra,* 151 B.R. at 74.

In the case before us, Debtor holds funds in trust for HEC derived from the Port Authority contracts but Trustee maintains that HEC also holds funds in trust, under the N.Y.Lien Law, for Debtor derived from the Phase II contract under which both Debtor and HEC were subcontractors. *See, In re Jandous Elec. Constr. Corp.,* 115 B.R. 46, 52 (Bkrtcy.S.D.N.Y.1990) ("the express language of Section 70(1) of Article 3–A of the New York Lien Law imposes a fiduciary duty upon both the general contractor and the subcontractor with respect to public improvement contracts.")

■ HEC argues that Trustee has not yet proven that HEC holds trust funds for Debtor under the Phase II contract. HEC acknowledges, however, that Raytheon Service Co. was the general contractor on the Phase II contract. HEC was a subcontractor to Raytheon and Debtor was HEC's subcontractor on the project. We will defer ruling on whether setoff is appropriate when each side holds funds in trust for the other until Trustee establishes at trial that HEC is indeed holding trust funds for the benefit of Debtor.[17]

■ The total judgment obtained by HEC against Debtor was for $491,060.78. Any balance owed to HEC, after we deduct HEC's proven trust-fund claim, is a general unsecured claim. HEC seeks to offset this general unsecured claim against the amount it owes Debtor on the Phase II contract. To

---

17. Trustee's time to enforce the Phase II trust claim has not lapsed. A trustee has up to two years after the order for relief to commence an action, if the limitations period has not expired before the filing of the petition. 11 U.S.C. § 108(a)(2). Debtor filed its petition on February 8, 1993. Commencement of a voluntary case constitutes an order for relief. 11 U.S.C. § 301. An action to enforce a trust may be brought up to one year after completion of the improvement. N.Y.Lien Law § 77.2. The exhibits to HEC's

Vice President's affidavit make clear that the work on Phase II was not completed as of April 6, 1992. Thus, enforcement of the trust was still a viable action on the date of Debtor's bankruptcy filing. Trustee had at least two years from that date to commence the action. This adversary proceeding was timely filed. Trustee may amend its complaint to conform to any procedural requirements to enforce a N.Y.Lien Law § 77 trust.

the extent Trustee establishes at trial that HEC owes trust funds on the Phase II contract to Debtor, HEC may not offset its unsecured claim against Debtor's trust fund claim. Debtor and HEC do not stand in the same capacity in these liabilities, a requirement with which HEC must comply under 11 U.S.C. § 553.

The matter before us is governed by F.R.Civ.P. 56, incorporated into bankruptcy procedure by F.R.Bkrtcy.P. 7056, which provides that summary judgment may be granted:

> ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

F.R.Civ.P. 56(c).

F.R.Civ.P. 56(d) provides that if a trial is required because summary judgment is not rendered for all the relief requested, the court shall ascertain those facts that are in controversy and those that are not. Once the court establishes the facts not in controversy, it shall direct further proceedings required in the action. Facts established by the court as not in controversy are deemed established for the purposes of a trial. F.R.Civ.P. 56(d). As will be noted in the conclusion, certain facts have now been established for trial.

### Conclusion

We grant summary judgment, in part, and deny summary judgment, in part. At the next status conference, we will set a trial date for those matters still in dispute. The facts not in controversy are deemed established for the purposes of the trial.

With respect to its trust claim under the New York Lien Law, HEC conforms to the procedural requirement to appear in a representative capacity because it is the only party with a claim to that fund.

HEC's claim, with respect to the subcontract relating to the Port Authority contract identified as LGA 320.052, was timely filed because HEC filed its counterclaims less than one year after final payment on that subcontract became due and, thus, complied with N.Y.Lien Law § 77(2). With respect to the other four subcontracts, HEC may present evidence at trial that those subcontracts include the same final payment paragraph that would establish that those trust claims were timely filed.

Trustee may present evidence at trial to establish to what extent HEC holds trust funds for the benefit of Debtor under the Phase II contract.

We defer ruling on the application of setoff to competing trust obligations until Trustee establishes at trial whether HEC holds funds in trust for Debtor.

Trustee may not offset against amounts it owes to HEC, any amounts owed by HEC to T.O.T.S., Inc. because the debts are not between the same parties and are, therefore, not mutual.

With respect to any trust funds Trustee proves are held by HEC for the benefit of Debtor, HEC may not offset from that amount any balance owed to HEC on the judgment that is an unsecured claim.

Counsel for Trustee to settle an order consistent with this Memorandum of Decision on five days' notice. The order shall set forth the facts that are and are not in controversy.